## SHELDEN *vs.* ROBINSON.

The driver of a stage coach, in the general employ of the proprietors of the coach, and in the habit of transporting packages of money for a small compensation, which was uniform whatever might be the amount of the package, is a bailee for hire, answerable for ordinary negligence, and not subject to the responsibilities of a common carrier; there being no evidence to show him a common carrier, farther than the fact that he took such packages of money as were offered.

Having received money to transport, the burden of proof is on him to excuse a nondelivery; and evidence to show that third persons have admitted that another package of money was stolen from the stage on the same day when he received the money in question, is not competent evidence to be submitted to a jury to prove a loss.

ASSUMPSIT. The declaration alleged that the defendant, being a common carrier, received of the plaintiff $148, at Boston, to be transported, for hire, from that place to Portsmouth, and there delivered to the plaintiff, and that the defendant had failed to deliver it.

There was also a count for money had and received.

At the trial in the Common Pleas, it appeared that the defendant received the money in Boston, to be transported to Portsmouth, as alleged; that he was at that time in the employ of the stage coach company as a driver, and that he was in the habit constantly of carrying packages of money, for hire, from one place to the other, for all persons who chose to employ him, and that this money had never been delivered.

It appeared further, that the drivers of stage coaches between those places were generally in the habit of carrying packages of money; that the compensation was uniformly twenty-five cents per package for carrying and delivering, whether the package contained a greater or less amount. Several of the witnesses testified that they as readily sent money by a driver who was insolvent as by any other,

when they deemed him honest and careful. The compensation was received by the drivers to their own use.

It did not appear that the defendant had ever advertised, or in any way held himself out as ready to carry, farther than the habit of receiving what was offered; and the defendant contended that, although the drivers were in the habit of carrying packages of money, as aforesaid, they were not answerable as common carriers, but that it was universally understood by those who employed them that they were responsible only for losses happening through want of due care and diligence, and not for losses accruing without any fault or negligence.

To the admission of this evidence the plaintiff objected, but it was received, and submitted to the jury as tending to show the common understanding of the community to be, that the drivers were only responsible for loss of packages happening from want of care and diligence; and with instructions, that if they believed such was the common understanding, then the defendant was entitled to a verdict, if the money had been lost without any fault or negligence on his part.

To show that the money had been lost without negligence, the defendant proved that he usually carried his packages in a box near his seat, which was as safe as any place in the coach; and the cashier of the Piscataqua Bank testified, that the Globe Bank, in Boston, had charged the Piscataqua Bank with the sum of $13,600, as sent by the defendant the same day the plaintiff's money was delivered to the defendant; and although this money had never been received, the whole sum had been allowed and paid to the Globe Bank. And further, that a person had been arrested in New-York from whom the Piscataqua Bank had received $7,600, which he said he took from the defendant's coach on that day.

The plaintiff objected to the admissibility of this evidence, but the court overruled the objection, and left it to the jury

to find whether the money had been lost without any fault or negligence of the defendant.

<div style="text-align: right; font-variant: small-caps;">Shelden<br>vs.<br>Robinson.</div>

The jury returned a verdict for the defendant, and the plaintiff moved for a new trial.

*Goodrich*, for the plaintiff, submitted the verdict should be set aside, for the reason that testimony incompetent was admitted ; for the reason, also, that the instruction to the jury was incorrect.    To ascertain the correctness of the exceptions taken, an examination of the law applicable to this class of bailment is necessary.    The first enquiry is, do the facts stated impose upon the defendant the character of a common carrier ?  A common carrier is one who undertakes, for hire or reward, to transport the goods of such as choose to employ him, from place to place.    *Jones on Bailment* 36, 103 ;  *Oliver's Law Summary* 313 ;  1 *Pick.* 50, *Dwight* vs. *Brewster ;  Story on Bailment* 322, 325 ;  2 *Kent's Com.* 598;  *ditto* 601, 602 ;  *Bac. Ab., Carriers, a. ; Jeremy, Law of Carriers* 4, 11 ; 2 *Starkie's Ev.* 330.

The case finds that defendant is the driver of a stage coach, and in the habit constantly of carrying packages of money, for hire, from Portsmouth to Boston, and from Boston to Portsmouth, for all persons who choose to employ him.    No material distinction between this character of the defendant and the definition above given from the authorities quoted is perceived.    It may, however, be contended that the defendant is merely a servant of the proprietors of the coach, and they and not defendant must be answerable. It cannot be necessary that defendant should own the coach in order to be chargeable as a common carrier.    It is equally clear that defendant may engage in other business, and notwithstanding such other business, may also be a common carrier :  That is to say, defendant may drive the coach for the benefit of other persons, so far as the conveyance of passengers and their baggage is concerned, and at the same time by agreement with the proprietors be allowed to carry

Shelden
*vs.*
Robinson.

money and small packages for his own profit. There is nothing illegal in such an arrangement; and if entered into by the drivers and owners, the driver may so manage as to become a common carrier, If the agreement is nothing more than a consent on the part of the owners that the driver may occasionally carry a bundle for himself or friends, and the driver does not, except casually, undertake to transport packages, in such case he would be simply a bailee for hire. If, however, the driver, with permission of the owners, for his own benefit and as a source of support, carries packages indiscriminately for all persons, he becomes a common carrier, at least so far as it concerns individuals contracting with him, or employing him, having a knowledge of the relation which he bears to the proprietors of the coach. That such an arrangement may be made, so as to charge the driver, is clearly intimated by *Story on Bailment* 327. Such was the agreement, I contend, made in this case.

2. What is the liability of a common carrier, and the reason of it?

A common carrier is answerable for all losses, accidents and damage which may happen in the transportation of goods, except those which occur by the act of God—or, as Sir William Jones more appropriately says,—inevitable accident and the public enemies. The reason of this liability, which is in the nature of an insurance, does not arise from the nature of this class of bailment, but is superadded to the contract from considerations of public policy.

*Jones on Bailment* 103, *b.; ditto in notes* 104; 1 *Term Rep.* 33, *Forward* vs. *Pittard;* 6 *John.* 160, *Colt et al.* vs. *McMeshen; Coggs* vs. *Bernard, vide Appendix, Jones;* 11 *Pick.* 42, *Hastings* vs. *Pepper; Story on Bailment* 330; *Oliver's Law Summary* 315 ; 2 *Kent's Com.* 602 ; 4 *N. H. Rep.* 306, *Moses* vs. *Norris; Jeremy, Law of Carriers,* 32, 34 ; *Story on Bailment* 319 ; 1 *Gilbert's Ev. by Lofft,* 423.

3. Can a common carrier exonerate himself from his liability as an insurer, and how?

It is now settled that a common carrier may make a special acceptance, which when made becomes a part of the contract, and discharges him from his liability as an insurer.

The policy of allowing this has been doubted by many able jurists. It was not fully recognized until 1804. The burden of proof to shew this special acceptance is upon the carrier; and he can do it in two ways only—by proof either of a special acceptance in any particular case, or by proof of notice given by himself, stating his terms and the risks which he is willing to assume. To render such notice available, he must prove that the person intended to be affected by it had knowledge of it, which knowledge may be inferred from circumstances, when those circumstances have a strong tendency to shew actual knowledge. *Jones on Bailment, in notes,* 104; *Story on Bailment* 338, 357, 358; 2 *Kent's Com.* 606; 3 *Taunt.* 271, *Harris* vs. *Packwood;* 4 *Camp.* 41, *Down* vs. *Fromont;* 2 *Camp.* 415, *Butler* vs. *Heane;* 2 *Camp.* 160; *Gilbert's Ev. by Lofft,* 435; *Jeremy, Law of Carriers,* 42.

The civil law holds the same doctrine in relation to common carriers, except the right of making a special acceptance, which is of modern growth. 2 *Domat's Civil Law* 239.

If the acts proved upon defendant constitute him a common carrier, the instruction of the court, which directed the jury to find for the defendant, if they believed the common understanding of the community to be that the drivers were only responsible for losses of packages happening for want of due care and diligence, is incorrect.

Incompetent testimony was admitted. Hearsay evidence is never received, except on the trial of rights of common and other rights claimed by prescription; and, secondly, on questions of pedigree, declarations of deceased persons are

admitted.   4 *Camp*. 414, *Berkeley Parage case, Alexander* vs. *Mahon ;*  11 *John*. 185.

*Bartlett,* for the defendant, said, that evidence of custom was introduced by the plaintiff to show the defendant to be a common carrier, and evidence of custom was admissible in answer to prove that he was not.

The usage was admissible to show what must have been the understanding of the parties, and thereby to settle the terms of the contract under which the money was received by the defendant.   2 *Stark. Ev.* 453 ; *Story's Conflict of Laws* 226 ; 2 *Kent's Com.* (2d ed.) 555 ; 7 *Petersdorff's Abr.* 432 ; 4 *Esp.* 53, *Savill* vs. *Barchard ;* 5 *Binn.* 287, *Stultz* vs. *Dickey ;* 1 *Holt's N. P. R.* 95, *note;* 1 *Car. & Pay. Wood* vs. *Wood ;* 10 *Mass.* 26, *Homer* vs. *Dorr ; ditto* 366, *Weld* vs. *Gorham ;* 6 *Mass.* 477, *Murray* vs. *Hatch ;* 15 *Mass.* 431, *Lewis* vs. *Thatcher ;* 5 *Pick.* 15, *Loring* vs. *Gurney ;* 2 *N. H. Rep.* 93, *Haven* vs. *Wentworth ;* 3 *Green.* 276, *Williams* vs. *Gilman ;* 6 *ditto* 154, *Farrar* vs. *Stackpole ;* 1 *Hall's S. C. R.* 602 ; *ditto* 84 ; *Story on Bailment* 352.

The evidence showed that neither of the parties could have understood that the defendant assumed the responsibilities of a common carrier.

If the defendant was not a common carrier, it is unimportant whether the testimony to show the loss was admissible or not.   If he was not a common carrier the plaintiff must show negligence.

The action cannot be sustained upon the count for money had and received, without evidence of a demand, or that a reasonable time had elapsed.

But the evidence to show the loss was admissible.   Admissions against the interest of the party making them are admissible, and this evidence was of that character.   10 *East.* 109, *Higham* vs. *Ridgway ;* 1 *Stark. Ev.* 53, 308 ; 3 *Bro. & Bing.* 132, *Goss* vs. *Watlington ;* 8 *Barn. &*

*Cres.* 556, *Whitmash* vs. *George ;* 4 *Pick.* 283, *Shearman* vs. *Atkins.* The credit of the sum by the cashier of the Piscataqua Bank was against his interest.

Entry of the birth of a child in an almanack has been held to be evidence. *T. Raym.* 84, *Herbert* vs. *Tuckal.*

The evidence was admissible from the necessity of the case. Under the English statute of *Winton,* relating to robbery, the person robbed was admitted, *ex necessitate,* to prove the fact of the robbery, and the amount. *Roscoe on Evid.* 87 ; 1 *Phil. Ev.* 57 ; 2 *Stark. Ev.* 681 ; 6 *Mod.* 216. And in *Herman* vs. *Drinkwater,* 1 *Green.* 27, the plaintiff himself was permitted to give evidence of the contents of a trunk, which the captain of a vessel had broken open.

The declarations of the individual in **New-York** were part of the *res gestæ.*

PARKER, J. The term common carrier is technically descriptive, and does not embrace every person who undertakes to carry goods for hire.

" To bring a person within the description of a common " carrier, he must exercise it as a public employment ; he " must undertake to carry goods for persons generally ; and " he must hold himself out as ready to engage in the trans- " portation of goods for hire, as a business and not as a " casual occupation, *pro hac vice.* A common carrier has, " therefore, been defined to be one who undertakes, for hire " or reward, to transport the goods of such as choose to " employ him, from place to place." *Story on Bailment* 322.

The employment of a common carrier is attended with peculiar responsibilities. And these are defined by law, unless restricted by special notice or agreement. Thus he is bound to take all goods offered, if he has the requisite convenience to carry ; and a refusal, without some just

ground, subjects him to an action. More than ordinary diligence is required of him, for he is answerable for all accidents, and thefts, and even for a loss by robbery. *Story* 328 ; 2 *Kent's Com.* 464 ; 4 *N. H. Rep.* 306, *Moses* vs. *Norris ;* 5 *Bing.* 217, *Riley* vs. *Horne ;* 11 *Pick.* 42, *Hastings* vs. *Pepper.*

Undoubtedly the proprietors, and the drivers, also, of stage coaches, may become answerable as common carriers. *Story* 325, 327 ; 1 *Pick.* 50, *Dwight* vs. *Brewster ;* 2 *Wend.* 327, 340, *Allen* vs. *Sewall.*

It has not been suggested that the proprietors are liable in this case ; and the evidence does not show the defendant a common carrier.

It does not show him to have exercised the business of carrying packages as a public employment, because his public employment was that of a driver of a stage coach, in the employ of others.

It does not show that he ever undertook to carry goods or money for persons generally, although he may in fact have taken all that was offered, as a matter of convenience ; or that he ever held himself out as ready to engage in the transportation of whatever was requested, notwithstanding it may have been unusual for him and other drivers to carry it.

This was not his general employment, and there is nothing to show that he would have been liable had he refused to take this money—especially as he was in the service of another, and as such servant might have had duties to perform inconsistent with the duty of a common carrier.

The amount to be paid for transportation is also to be considered. A common carrier is an insurer, and entitled to be paid a premium for his insurance. 5 *Bing.* 217 ; 4 *Barn. & Ald.* 21, *Batson* vs. *Donovan ;* 3 *Taunt.* 264, *Harris* vs. *Packwood.*

There being no evidence that any compensation was agreed on between these parties, it is to be presumed that the usual compensation was to be paid. The plaintiff might

have relied on the usage upon a claim for payment. And as the sum was small, and uniform whatever might be the amount of money, it would seem very clear that no one committing a package of money to the defendant, under such circumstances, and without any special agreement, could have considered him an insurer of safety.

The law applicable to common carriers has been said to be one of great rigor, and it would be unjust to impose the responsibilities of a common carrier upon an individual, until he has so conducted, or held himself out, as to have fairly assumed them. 2 *Peters* 150, *Boyce* vs. *Anderson;* 12 *Johns.* 233, *Roberts* vs. *Turner.*

A party who, without special agreement, pays the hire of a bailee, comes with an ill grace to require of the other to answer for a risk for which he has received no reward.

From the case the defendant, if he is the party answerable to the plaintiff, was a bailee to carry for hire, and as such responsible for ordinary negligence; and this was substantially the direction to the jury. That it was put upon the general understanding is not material.

Upon the first count therefore the plaintiff cannot recover.

But it does not appear that the defendant is not answerable on the count for money had and received. He received the money of the plaintiff, and has never delivered it. It is incumbent on him to show that his failure to deliver has not been the result of negligence on his part.

He attempted to show that the money was stolen from him—and for this purpose he proved that he usually carried his packages in a box near his seat—that the Globe Bank had charged the Piscataqua Bank with a sum of money, as sent by the defendant on the same day, which had not been received, but had been allowed and paid—and that a person had been arrested in New-York from whom the Piscataqua Bank had received a sum of money, as part of the sum so sent, and who acknowledged that he took it from the stage that day.

If this is sufficient, a bailee may discharge himself from liability for all goods that can be concealed, by proof of the loss of a single package.

The evidence, such as it is, relates entirely to a larceny of a different parcel, and that from a place where this money does not appear to have been deposited.

It would be going very far, were the larceny of the other package fully proved by competent evidence, to presume that this package was put in the same place, and stolen also.

The inadmissibility of *res inter alios acta*, as a general rule, is well settled; and the exceptions which have been relied on, of entries in books or acts of deceased persons against their interest, and relating to facts and transactions which must have been within their knowledge, do not apply.

The individual who allowed the money to the Globe Bank is not dead, but was introduced as a witness. It did not appear that he had any actual knowledge that the money he allowed had been lost without the fault of the defendant, or that there had been an actual loss; and the confession of the individual in New-York is no part of the *res gestæ*, and cannot bind this plaintiff in relation to money to which the confession had no reference, and which was not on that occasion in question in any manner whatever.

The authorities, also, relative to the admission of the party himself, as a witness, in case of robbery, cannot avail in this case. If they could prove any thing, it would be, not that this evidence was admissible, but that the defendant himself might be examined; but no question of that character arises in this case to require an opinion.

*Verdict set aside, and new trial.*